**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 22, 2019

Douglas B. Farquhar, Esq.
Hyman, Phelps & McNamara P.C.
700 13th Street, NW, Suite 1200
Washington, D.C. 20005

### Re: Rochester Drug Co-operative – Deferred Prosecution Agreement

Dear Mr. Farquhar:

Pursuant to the understandings specified below, the Office of the United States Attorney for the Southern District of New York (the "Office") and the defendant Rochester Drug Co-operative, Inc. ("RDC"), under authority granted by its Board of Directors in the form of a Board Resolution (a copy of which is attached as Exhibit A), hereby enter into this Deferred Prosecution Agreement (the "Agreement").

### The Criminal Information

1.      RDC consents to the filing of a three-count Information (the "Information") in the United States District Court for the Southern District of New York (the "Court"), charging RDC with conspiracy to distribute controlled substances outside the scope of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Section 846; conspiracy to defraud the United States, in violation of Title 18, United States Code, Section 371; and knowingly failing to furnish suspicious order reports to the United States Drug Enforcement Administration ("DEA"), in violation of Title 21, United States Code, Section 842(a)(5) and (c)(2), and Title 18, United States Code, Section 2. A copy of the Information is attached as Exhibit B. This Agreement shall take effect upon its execution by both parties (the "Effective Date").

### Acceptance of Responsibility

2.      RDC stipulates that the facts set forth in the Statement of Facts, attached hereto as Exhibit C and incorporated herein, are true and accurate, and admits, accepts and acknowledges that it is responsible under United States law for the acts of its officers and employees as set forth in the Statement of Facts. Should the Office pursue the prosecution that is deferred by this Agreement, RDC stipulates to the admissibility of the Statement of Facts in any proceeding including any trial and sentencing proceeding.

## Payment and Forfeiture Obligation

3.     As a result of the conduct described in the Information and the Statement of Facts, RDC agrees to pay $20,000,000 (the "Stipulated Forfeiture Amount") to the United States, pursuant to this Agreement.

4.     RDC agrees that the Stipulated Forfeiture Amount represents a substitute *res* for moneys furnished to RDC in exchange for controlled substances in connection with RDC's conduct described in the Statement of Facts, and is subject to civil forfeiture to the United States pursuant to 21 U.S.C. § 881.

5.     RDC further agrees that this Agreement, the Information and the Statement of Facts may be attached and incorporated into a civil forfeiture complaint (the "Civil Forfeiture Complaint") that will be filed against the Stipulated Forfeiture Amount. By this agreement, RDC expressly waives any challenge to that Civil Forfeiture Complaint and consents to the forfeiture of the Stipulated Forfeiture Amount to the United States. RDC agrees that it will not file a claim with the Court or otherwise contest the civil forfeiture of the Stipulated Forfeiture Amount and will not assist a third party in asserting any claim to the Stipulated Forfeiture Amount. RDC also waives all rights to service or notice of the Civil Forfeiture Complaint.

6.     RDC shall transfer one half of the Stipulated Forfeiture Amount ($10,000,000) to the United States by no later than May 3, 2019 (or as otherwise directed by the Office following such date). Such payment shall be made by wire transfer to the United States Marshals Service, pursuant to wire instructions provided by the Office. The remaining half of the Stipulated Forfeiture Amount ($10,000,000) shall be paid over a five-year period at the rate of $2,000,000 per year in each subsequent year until 2024, with payment due on or before February 1st of each year. If RDC fails to timely make the payment required under this paragraph, interest (at the rate specified in Title 28, United States Code, Section 1961) shall accrue on the unpaid balance through the date of payment, unless the Office, in its sole discretion, chooses to reinstate prosecution pursuant to paragraphs 14 through 15 below. RDC certifies that the funds used to pay the Stipulated Forfeiture Amount are not the subject of any lien, security agreement, or other encumbrance. Transferring encumbered funds or failing to pass clean title to these funds in any way will be considered a breach of this Agreement.

7.     RDC agrees that the Stipulated Forfeiture Amount shall be treated as a penalty paid to the United States government for all purposes, including all tax purposes. RDC agrees that it will not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, local, or foreign tax for any portion of the $20,000,000 that RDC has agreed to pay to the United States pursuant to this Agreement.

## Obligation to Cooperate

8.     RDC agrees to cooperate fully with the Office, the DEA, and any other governmental agency designated by the Office regarding any matter relating to the conduct described in the Information or Statement of Facts, any investigation or prosecution of RDC's



current or former officers, agents, affiliates and employees, or any matter relating to unlawful conduct by RDC's current or former customers.

9.      It is understood that RDC shall (a) truthfully and completely disclose all information with respect to the activities of RDC and its officers, agents, affiliates and employees concerning all matters about which the Office inquires of it, which information can be used for any purpose; (b) cooperate fully with the Office, DEA, any other law enforcement agency designated by the Office; (c) attend all meetings at which the Office requests its presence and use its best efforts to secure the attendance and truthful statements or testimony of any past or current officers, agents, or employees of RDC at any meeting or interview or before the grand jury or at trial or at any other court proceeding; (d) provide to the Office upon request any document, record, or other tangible evidence relating to matters about which the Office or any designated law enforcement agency inquires of it; (e) assemble, organize, and provide in a responsive and prompt fashion, and upon request, on an expedited schedule, all documents, records, information and other evidence in RDC's possession, custody or control as may be requested by the Office, DEA or designated law enforcement agency; (f) volunteer and provide to the Office any information and documents that come to RDC's attention that may be relevant to the Office's investigation of this matter, any issue related to the Statement of Facts, and any issue that would fall within the scope of the duties of the independent monitor (the "Independent Monitor") referred to in paragraph 29; (g) provide testimony or information necessary to identify or establish the original location, authenticity, or other basis for admission into evidence of documents or physical evidence in any criminal or other proceeding as requested by the Office, DEA or designated governmental agency, including but not limited to information and testimony concerning the conduct set forth in the Information and Statement of Facts; (h) bring to the Office's attention all criminal conduct by RDC or any of its agents or employees acting within the scope of their employment related to violations of the federal laws of the United States, as to which RDC's Board of Directors, senior management, or legal and compliance personnel are aware; (i) bring to the Office's attention any administrative, regulatory, civil or criminal proceeding or investigation of RDC or any agents or employees acting within the scope of their employment; and (j) commit no crimes whatsoever under the federal laws of the United States subsequent to the execution of this Agreement.  Nothing in this paragraph shall require RDC to produce information protected by a valid claim of attorney-client privilege or the attorney work product doctrine.

10.      RDC agrees that its obligations pursuant to this Agreement, which shall commence on the Effective Date, will continue for five years from the date of the Court's acceptance of this Agreement, unless otherwise extended pursuant to paragraphs 16 through 18 below.  RDC's obligation to cooperate is not intended to apply in the event that a prosecution against RDC by this Office is pursued and not deferred.

## Obligation to Report

11.      It is understood that RDC shall promptly report to the DEA all suspicious orders as defined in the Controlled Substances Act and its implementing regulations, including but not limited to 21 C.F.R. § 1301.74.  It is further understood that RDC shall promptly report to the DEA any of its customers that it knows or has reason to believe are distributing controlled substances outside the scope of professional practice and not for a legitimate medical purpose.

## Deferral of Prosecution

12.     In consideration of RDC's entry into this Agreement and its commitment to: (a) accept and acknowledge responsibility for its conduct, as described in the Statement of Facts, and acknowledge the filing of the Information; (b) cooperate with the Office, DEA, any other law enforcement agency designated by this Office; (c) make the payments specified in this Agreement; (d) comply with Federal criminal laws (as provided herein in paragraph 9); and (e) otherwise comply with all of the terms of this Agreement, the Office shall recommend to the Court that prosecution of RDC on the Information be deferred for five years from the date of the signing of this Agreement. RDC shall expressly waive indictment and all rights to a speedy trial pursuant to the Sixth Amendment of the United States Constitution, Title 18, United States Code, Section 3161, Federal Rule of Criminal Procedure 48(b), and any applicable Local Rules of the United States District Court for the Southern District of New York for the period during which this Agreement is in effect.

13.     It is understood that this Office cannot, and does not, agree not to prosecute RDC for criminal tax violations. However, if RDC fully complies with the terms of this Agreement, no testimony given or other information provided by RDC (or any other information directly or indirectly derived therefrom) will be used against RDC in any criminal tax prosecution. In addition, the Office agrees that, if RDC is in compliance with all of its obligations under this Agreement, the Office will, within thirty (30) days after the expiration of the period of deferral (including any extensions thereof), seek dismissal with prejudice as to RDC of the Information filed against RDC pursuant to this Agreement. Except in the event of a violation by RDC of any term of this Agreement or as otherwise provided in paragraph 14, the Office will bring no additional charges against RDC, except for criminal tax violations, relating to its conduct as described in the admitted Statement of Facts. This Agreement does not provide any protection against prosecution for any crimes except as set forth above and does not apply to any individual or entity other than RDC. RDC and the Office understand that the Agreement to defer prosecution of RDC can only operate as intended if the Court grants a waiver of the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(2). Should the Court decline to do so, both the Office and RDC are released from any obligation imposed upon them by this Agreement, and this Agreement shall be null and void, except for the tolling provision set forth in paragraph 14.

14.     It is further understood that should the Office in its sole discretion determine that RDC has: (a) knowingly given false, incomplete or misleading information either during the term of this Agreement or in connection with the Office's investigation of the conduct described in the Information and Statement of Facts, (b) committed any crime under the federal laws of the United States subsequent to the execution of this Agreement, or (c) otherwise violated any provision of this Agreement, RDC shall, in the Office's sole discretion, thereafter be subject to prosecution for any federal criminal violation, or suit for any civil cause of action, of which the Office has knowledge, including but not limited to a prosecution or civil action based on the Information, the Statement of Facts, the conduct described therein, or perjury and obstruction of justice. Any such prosecution or civil action may be premised on any information provided by or on behalf of RDC to the Office or DEA at any time. In any such prosecution or civil action, it is understood that: (a) no charge or claim would be time-barred provided that such prosecution or civil action is brought

within the applicable statute of limitations period, excluding the period from the execution of this Agreement until its termination; (b) RDC agrees to toll, and exclude from any calculation of time, the running of the applicable statute of limitations for the length of this Agreement starting from the date of the execution of this Agreement and including any extension of the period of deferral of prosecution pursuant to paragraphs 16 through 18 below; and (c) RDC waives any objection to venue with respect to any charges arising out of the conduct described in the Statement of Facts and consents to the filing of such charges in the Southern District of New York. By this Agreement, RDC expressly intends to and hereby does waive its rights in the foregoing respects, including any right to make a claim premised on the statute of limitations, as well as any constitutional, statutory, or other claim concerning pre-indictment delay. Such waivers are knowing, voluntary, and in express reliance on the advice of RDC's counsel.

15.     It is further agreed that in the event that the Office, in its sole discretion, determines that RDC has violated any provision of this Agreement, including by failure to meet its obligations under this Agreement: (a) all statements made or acknowledged by or on behalf of RDC to the Office or DEA, including but not limited to the Statement of Facts, or any testimony given by RDC or by any agent of RDC before a grand jury, or elsewhere, whether before or after the date of this Agreement, or any leads from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings hereinafter brought by the Office against RDC; and (b) RDC shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made or acknowledged by or on behalf of RDC before or after the date of this Agreement, or any leads derived therefrom, should be suppressed or otherwise excluded from evidence. It is the intent of this Agreement to waive any and all rights in the foregoing respects.

16.     RDC agrees that, in the event that the Office determines during the period of deferral of prosecution described in paragraphs 10 and 12 above (or any extensions thereof) that RDC has violated any provision of this Agreement, an extension of the period of deferral of prosecution may be imposed in the sole discretion of the Office, up to an additional one year, but in no event shall the total term of the deferral-of-prosecution period of this Agreement exceed six (6) years. Any extension of the deferral-of-prosecution period extends all terms of this Agreement for an equivalent period.

17.     RDC, having truthfully admitted to the facts in the Statement of Facts, agrees that it shall not, through its attorneys, agents, or employees, make any statement, in litigation or otherwise, contradicting the Statement of Facts or its representations in this Agreement. Consistent with this provision, RDC may raise defenses and/or assert affirmative claims and defenses in any proceedings brought by private and/or public parties as long as doing so does not contradict the Statement of Facts or such representations. Any such contradictory statement by RDC, its present or future attorneys, agents, or employees shall constitute a violation of this Agreement and RDC thereafter shall be subject to prosecution as specified in paragraphs 14 through 15, above, or the deferral-of-prosecution period shall be extended pursuant to paragraph 16, above. The decision as to whether any such contradictory statement will be imputed to RDC for the purpose of determining whether RDC has violated this Agreement shall be within the sole discretion of the Office. Upon the Office's notifying RDC of any such contradictory statement, RDC may avoid a finding of violation of this Agreement by repudiating such statement both to the recipient of such

statement and to the Office within four business days after having been provided notice by the Office. RDC consents to the public release by the Office, in its sole discretion, of any such repudiation. Nothing in this Agreement is meant to affect the obligation of RDC or its officers, directors, agents or employees to testify truthfully to the best of their personal knowledge and belief in any proceeding. Nothing in paragraph 17 applies to statements made, in litigation or otherwise, by any present or former officers, directors, agents or employees of RDC that are made solely in an individual capacity, and not on behalf of RDC.

18.     RDC agrees that it is within the Office's sole discretion to choose, in the event of a violation, the remedies contained in paragraphs 14 and 15 above, or instead to choose to extend the period of deferral of prosecution pursuant to paragraph 16, provided, however, that if RDC's violation of this Agreement is limited to an untimely payment of the Stipulated Forfeiture Amount, the Office may elect instead to choose the additional financial penalties set forth in paragraph 6, above.  RDC understands and agrees that the exercise of the Office's discretion under this Agreement is unreviewable by any court.  Should the Office determine that RDC has violated this Agreement, the Office shall provide notice to RDC of that determination and provide RDC with an opportunity to make a presentation to the Office to demonstrate that no violation occurred, or, to the extent applicable, that the violation should not result in the exercise of those remedies or in an extension of the period of deferral of prosecution, including because the violation has been cured by RDC.

## **Corporate Governance**

19.     RDC's Board of Directors (the "Board") shall establish and maintain a standing Controlled Substances Compliance Committee (the "CSCC"), in accordance with the procedures set forth below.

20.     Pursuant to Section 61(d) of the Cooperative Corporations Law of the State of New York, RDC will propose to its voting members that RDC's by-laws be amended to permit RDC's current directors (the "Board") to appoint at least two independent directors (the "Independent Directors") to serve the interest of the general public (the "Proposed Amendment").  No director shall qualify as "independent" unless the Board affirmatively determines that the director has no material relationship with RDC, either directly or indirectly, as an employee, shareholder, member, officer, or customer of RDC.  In the event that RDC subsequently expands the size of the Board, it will appoint additional Independent Directors to the Board in an amount consistent with Section 61 of New York Cooperative Corporations Law.  In the event that RDC subsequently contracts the size of the Board, it shall retain at least two Independent Directors.

21.     If the Proposed Amendment is successful, the CSSC must, at a minimum, consist of two Independent Directors at all times.  RDC management and the Board shall use best efforts to ensure passage of the Proposed Amendment, including (a) educating RDC voting members as to the reasons for adopting the Proposed Amendment, and (b) publicizing to RDC voting members a Board resolution recommending that RDC members vote in favor of the Proposed Amendment.

22.     If, however, the Proposed Amendment fails to obtain the necessary 2/3rds vote of its membership required for passage under RDC's by-laws, RDC shall create or maintain a CSCC

in the form of an advisory committee to the Board. Any Advisory CSCC shall be composed of an existing director or directors of the Board, plus two individuals not affiliated with RDC that are to be selected by the Board for their industry and compliance experience. One of these outside advisers shall serve as the Committee Chair. At least one outside advisor must have specific expertise in the field of compliance with controlled substances regulations and policies (the Subject Matter Expert, or "SME"). Before seeking passage of the Proposed Amendment, RDC may, at its discretion, establish an Advisory CSCC. If RDC does so, any outside advisors serving on the Advisory CSCC shall be considered "independent" for purposes of appointment as Independent Directors on a CSCC, notwithstanding their receipt of consideration for their service as outside advisors on the Advisory CSCC.

23.     Regardless of whether the CSCC contains Independent Directors, or outside advisory consultants, the CSCC shall report regularly to the full Board on compliance issues, and shall regularly review the reports from, and interact with, the Independent Monitor, as is necessary to comply with the terms of this Agreement. In addition, the CSSC, as well as the full Board, shall have access to timely legal advice, and shall be regularly advised by counsel regarding all aspects of RDC's compliance with the Controlled Substances Act, its implementing regulations, and this Agreement.

24.     RDC's chief compliance officer ("CCO") shall regularly report to the Board or, alternatively, the CSCC. The Board, including the CSCC, shall be empowered with broad authority to retain outside consultants, compliance services, legal advisors, and/or auditors as necessary to ensure RDC's compliance with all requirements of the Controlled Substances Act, its implementing regulations, and this Agreement. The Board, including the CSCC, shall oversee compliance decisions and RDC management's compliance team.

25.     The CSCC shall also review RDC's Controlled Substances Monitoring Program requirements, and every two years recommend to the full Board any necessary updates of systems or procedures to ensure that the CSMP remains current and in compliance with all federal and state regulations. As part of this review, the CSCC shall update RDC's CSMP manual, and shall report to the Board on evolving or new technologies, including improved data analysis, that could be utilized to improve RDC's suspicious order reporting systems.

26.     During the term of this Agreement, RDC shall promptly notify the Office of any changes to the membership of the Board or RDC's executive team, including but not limited to the addition or removal of an individual, or a change in an individual's title or responsibility.

## Compliance Program

27.     RDC represents that it has implemented and will continue to implement and maintain an effective compliance program designed to prevent and detect violations of the Controlled Substances Act, its implementing regulations, and the directives and orders of any United States regulator, including without limitation the DEA. In order to address deficiencies in its compliance controls, policies, and procedures, RDC shall maintain and implement a Controlled Substances Monitoring Program (the "CSMP") that meets the requirements set forth in the compliance addendum (the "Compliance Addendum") (a copy of which is attached as Exhibit D).

28.     It is understood that RDC shall promptly notify the Office of (a) any deficiencies, failings, or matters requiring attention with respect to RDC's adoption, implementation, or maintenance of the compliance programs described in the Compliance Addendum; and (b) any steps taken or planned to be taken by RDC to address the identified deficiency, failing, or matter requiring attention. RDC's failure to adopt, implement, or maintain a CSMP as described in the Compliance Addendum shall constitute a violation of this Agreement.

## Independent Monitor

29.     RDC will implement the provisions regarding the Independent Monitor, as required in the addendum attached as Exhibit E.

## DEA Registration

30.     RDC shall comply with any and all terms of the DEA letter agreement regarding its Controlled Substances Act registration (the "DEA Letter Agreement") entered into between DEA and RDC (a copy of which is attached as Exhibit F). Nothing about the DEA Letter Agreement shall in any way modify the terms of this Agreement or shall be construed as a condition precedent for enforcing any term of this Agreement. In the event of a conflict between the terms of the DEA Letter Agreement and this Agreement, the terms of this Agreement shall control.

## Limits of this Agreement

31.     It is understood that this Agreement is binding on the Office and the DEA but does not bind any other Federal agencies, any state or local law enforcement agencies, any licensing authorities, or any regulatory authorities. However, if requested by RDC or its attorneys, the Office will bring to the attention of any such agencies, including but not limited to any regulators, as applicable, this Agreement, the cooperation of RDC, and RDC's compliance with its obligations under this Agreement.

## Sale, Merger, or Insolvency of RDC

32.     Except as may otherwise be agreed by the parties hereto in connection with a particular transaction, RDC agrees that in the event it sells, merges, or transfers all or substantially all of its business operations as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, or transfer, it shall include in any contract for sale, merger or transfer a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement. However, the terms of this Agreement shall not be construed to apply to that portion of any purchaser's or successor in interest's assets or operations that are unrelated to RDC's assets or operations. The Government shall consider any request by RDC that the Government, in its sole discretion, waive the requirement that all provisions in this paragraph bind RDC and/or any of its purchasers or any successors in interest.

Case 1:19-cr-00290-NRB   Document 5   Filed 04/23/19   Page 9 of 11

Page 9

33.     RDC also represents and warrants that it has reviewed its financial situation, that it currently is not insolvent as such term is defined in 11 U.S.C. § 101(32), and that it reasonably believes that it shall remain solvent following payment to the Government of the Stipulated Forfeiture Amount.  Further, RDC and the Government warrant that, in evaluating whether to execute this Stipulation, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to RDC, within the meaning of 11 U.S.C. § 547(c)(1); and (b) have concluded that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.  Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which RDC was or became indebted to on or after the Effective Date, within the meaning of 11 U.S.C. § 548(a)(1).

34.     If within 91 days of the Effective Date of this Agreement or any payment made under this Agreement, RDC commences any case, action, or other proceeding under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors or a third party commences any case, action, or other proceeding under any law related to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking an order for relief of RDC's debts, or seeking to adjudicate RDC as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for RDC or for all or part of RDC's assets, RDC agrees as follows:

a.     RDC's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and RDC shall not argue or otherwise take the position in any such case, action, or proceeding that (i) RDC's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) RDC was insolvent at the time this Agreement was entered into; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to RDC.

b.     If any of RDC's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the Government, at its option, may rescind the Agreement and bring any criminal, civil and/or administrative claim, action, or proceeding against RDC for the claims that would otherwise be covered by the release in Paragraph 13 above.  RDC agrees that (i) any such charge, claim, action, or proceeding brought by the Government would not be subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the charge, case, action, or proceeding described in the first sentence of this Paragraph, and RDC shall not argue or otherwise contend that the Government's charge, claim, action, or proceeding is subject to an automatic stay; (ii) RDC shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any charge, claim, action, or proceeding that is brought by the Government within 60 calendar days of written notification to RDC that the release has been rescinded pursuant to this Paragraph, except to the extent such defenses were available on the date of execution of this Agreement; and (iii) the Government has a valid claim against RDC in the amount of the Stipulated Forfeiture Amount and the Government may pursue its charge, claim in the case, action, or proceeding described in the first sentence of this Paragraph, as well as in any other case, action, or proceeding.

c. RDC acknowledges that the agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

## Civil Settlement Agreement and Integration Clause

35.     This Agreement sets forth all the terms of the Deferred Prosecution Agreement between RDC and the Office. No modifications or additions to this Agreement shall be valid unless they are in writing and signed by the Office, RDC's attorneys, and a duly authorized representative of RDC.

36.     RDC shall comply with any and all terms of the Stipulation and Order of Settlement and Dismissal (the "Civil Settlement Agreement") entered into between the Civil Division of this Office and RDC (a copy of which is attached as Exhibit G).

37.     Nothing about the Civil Settlement Agreement shall in any way modify the terms of this Agreement or shall be construed as a condition precedent for enforcing any term of this Agreement. In the event of a conflict between the terms of the Civil Settlement Agreement and this Agreement, the terms of this Agreement shall control.

## Public Filing

38.     RDC and the Office agree that, upon the submission of this Agreement (including the Statement of Facts and other attachments) to the Court, this Agreement and its attachments shall be filed publicly in the proceedings in the United States District Court for the Southern District of New York.

39.     The parties understand that this Agreement reflects the unique facts of this case and is not intended as precedent for other cases.

## Execution in Counterparts

40.     This Agreement may be executed in one or more counterparts, each of which shall be considered effective as an original signature. Further, all facsimile and digital images of signatures shall be treated as originals for all purposes.

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

By:     _Alucler Roda_

Stephanie Lake
Louis Pellegrino
Nicolas Roos
Alexandra Rothman
Assistant United States Attorneys

_Laura Birger_

LAURA GROSSFIELD BIRGER
Chief, Criminal Division

Accepted and agreed to:

_John T. Kinney_

John Kinney
Interim Chief Executive Officer
Rochester Drug Co-operative

_Doug B. Farquhar_

Douglas B. Farquhar, Esq.
Attorney for Rochester Drug Co-operative